# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00775-CR

---

**Ex parte Raul Alvarez**

---

**FROM COUNTY COURT AT LAW NO. 9 OF TRAVIS COUNTY**
**NO. C-1-CR-18-100055, HONORABLE KIM WILLIAMS, JUDGE PRESIDING**

---

## O P I N I O N

Appellant Raul Alvarez was convicted of the offense of driving while intoxicated and sentenced to 120 days' confinement in county jail. Alvarez appealed his conviction and was never in custody while his appeal was pending. After his conviction was affirmed on appeal, Alvarez was ordered to begin serving his sentence. Alvarez subsequently filed an application for writ of habeas corpus, asserting that he should have been in custody while his appeal was pending and was thus entitled to credit for time served. The trial court denied relief. We will affirm the trial court's order.

## BACKGROUND

The record reflects that Alvarez was convicted and sentenced on December 6, 2016, with the 120-day jail sentence to commence on January 3, 2017. On December 21, 2016, Alvarez filed both a notice of appeal and a "motion for reasonable bail pending appeal." That same day, the trial court granted Alvarez's motion, setting bail in the amount of $3,000 with the condition that Alvarez be prohibited from driving without an ignition interlock device, valid driver's license, and

insurance. On December 27, 2016, a Travis County deputy clerk issued a recall of the trial court's order committing Alvarez to the custody of the Travis County Sheriff.

The recall of the commitment order was indisputably improper, because Alvarez never paid the bail amount or executed an appeal bond. Instead, Alvarez decided that he wanted to serve his sentence on the date it was scheduled to begin while his appeal was pending. However, instead of notifying the trial court that he had changed his mind, Alvarez simply reported to the bonding desk at the Blackwell-Thurman Criminal Justice Center on January 3, 2017, and attempted to turn himself in to the Travis County Sheriff's Office. Sheriff's deputies informed Alvarez that there was "nothing in the system" instructing them to take him into custody and advised him to return the following day. Alvarez returned on January 4 and was again told that he was "not in the system." This time, Alvarez was advised to "just go home." Alvarez returned to his home in Houston, free from custody, unsupervised by the trial court or any other government entity, and under no appeal bond conditions.

On July 5, 2018, Alvarez's conviction was affirmed on appeal. *See Alvarez v. State*, No. 13-17-00042-CR, 2018 Tex. App. LEXIS 5029 (Tex. App.—Corpus Christi July 5, 2018, no pet.) (mem. op., not designated for publication). Mandate issued on September 18, 2018. On September 20, 2018, the trial court issued a commitment order for Alvarez to begin serving his sentence on October 20, 2018. That date was later adjusted to November 15, 2018. On that date, Alvarez voluntarily surrendered himself to the Travis County Sheriff's Office. Also on that date, the trial court, after a hearing, denied Alvarez's application for writ of habeas corpus. This appeal followed.

## JURISDICTION

Texas Code of Criminal Procedure article 11.09 provides that a person who is "confined on a charge of misdemeanor" may apply for habeas relief "to the county judge of the county in which the misdemeanor is charged to have been committed." Tex. Code Crim. Proc. art. 11.09. The Court of Criminal Appeals has held that "appeals from denial of relief sought in a misdemeanor post conviction writ of habeas corpus should be directed to the courts of appeals." *Ex parte Jordan*, 659 S.W.2d 827, 828 (Tex. Crim. App. 1983). Accordingly, we have jurisdiction to review the denial of relief here. *See id.*; *see also Ex parte Kulow*, 563 S.W.3d 383 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (reviewing similar issue of trial court's denial of habeas relief from sheriff's decision to change policy regarding "good-time credit").

## STANDARD OF REVIEW

To prevail in a post-conviction writ of habeas corpus proceeding, the applicant bears the burden of proving, by a preponderance of the evidence, the facts that would entitle him to relief. *Ex parte Lewis*, 537 S.W.3d 917, 921 (Tex. Crim. App. 2017); *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In reviewing a trial court's decision to grant or deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling and, absent an abuse of discretion, uphold the ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd) *see Ex parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013). In conducting our review, we afford almost total deference to the trial court's determination of the historical facts that are supported by the record, especially when the fact findings are based

on an evaluation of credibility and demeanor. *Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011); *Ex parte Vasquez*, 499 S.W.3d 602, 612 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). We afford the same amount of deference to the trial judge's application of the law to the facts, if the resolution of the ultimate question turns on an evaluation of witness credibility and demeanor. *Ali*, 368 S.W.3d at 831. However, where the resolution of the ultimate question turns on an application of legal standards, we review the ruling de novo. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999); *Ex parte Nelson*, 546 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Ali*, 368 S.W.3d at 831. In this case, because the facts are undisputed, we review de novo the legal question of whether Alvarez was entitled to the relief sought in this proceeding.

## DISCUSSION

In arguing that he is entitled to receive credit for time served, Alvarez relies on a line of cases from the Court of Criminal Appeals in which "convicted inmates were inadvertently released from custody when they should have remained serving their legitimately imposed sentences." *Ex parte Thiles*, 333 S.W.3d 148, 150 (Tex. Crim. App. 2011) (citing *Ex parte Baker*, 297 S.W.3d 256, 259 (Tex. Crim. App. 2009); *Ex parte Rowe*, 277 S.W.3d 18, 19-20 (Tex. Crim. App. 2009); *Ex parte Hale*, 117 S.W.3d 866, 873 (Tex. Crim. App. 2003)). "In such cases of erroneous release, [the court has] consistently held that 'an individual is entitled to time credit toward the expiration or discharge of a sentence when the individual, through no fault of his or her own, was erroneously released from custody by the State.'" *Id.* (quoting *Baker*, 297 S.W.3d at 258).

In *Thiles*, for example, the habeas applicant was released on bond in 1985 after the intermediate court of appeals had reversed his conviction and the State's appeal of the reversal was

4

pending before the Court of Criminal Appeals. *Id*. at 149. In 1986, the Court of Criminal Appeals reversed the judgment of the intermediate court and remanded the case to that court to address Thiles's remaining points of error. *Id*. The intermediate court then affirmed Thiles's conviction, and mandate issued in 1987. *Id*. However, no arrest warrant was issued until 2007. *Id*.

In his habeas application, Thiles argued that he was entitled to receive credit from the time that mandate had issued until the time that he had been arrested, and the Court of Criminal Appeals agreed. *Id*. at 150. The court observed that although Thiles was "legitimately released on an appeal bond," he "should have been re-incarcerated once his conviction was final in 1987." *Id*. at 151. However, because of the failure of the State to issue a warrant until 2007, "the applicant was never informed that a mandate of affirmance had issued in his case. . . . Instead, he was allowed to remain at large erroneously, without his knowledge and through no fault of his own." *Id*. at 152. The court further observed that Thiles "never violated the conditions of his appellate bond, having never been called to appear before the court upon the affirmance of his conviction on appeal." *Id*. The court added that "[t]he State, the applicant, and the trial court all agree that the principle of reasonableness underlying the erroneous-release cases should apply on the facts of this case, and that the applicant should be granted the relief." *Id*. at 151–52. "Under these particular circumstances," the court concluded, Thiles was "entitled to day-for-day time credit from the time the appellate mandate issued to the time he was finally arrested on the warrant." *Id*. at 152.

Although Alvarez acknowledges that his case is not, strictly speaking, an erroneous-release case, he nevertheless asserts that we should apply "the same principles and logic in this matter." In Alvarez's view, "the fact that he remained out of custody, through no fault of his own, due to error and inaction by the State, was tantamount to an erroneous release."

5

We disagree. As an initial matter, Alvarez was never in custody while his appeal was pending. Thus, cases that involve the erroneous *release* of a prisoner from custody are inapplicable. To allow Alvarez to receive jail-time credit based on a deputy clerk's mistake, when Alvarez was never in jail while his appeal was pending but was instead completely free and unsupervised, would effectively enable Alvarez to avoid serving his sentence altogether. Such a result is not supported by the erroneous-release line of cases. *Cf. Hale*, 117 S.W.3d at 870 (allowing inmate to receive credit for time served when erroneously released from custody because release was not "unconstitutional exercise[] of the executive power of clemency by local officials" and "did not place in the hands of [local officials] the power to defeat" trial court's judgment).

In contending otherwise, Alvarez relies primarily on *Thiles*, *supra*, and *Ex parte Blackwell*, No. AP-76,602, 2011 Tex. Crim. App. Unpub. LEXIS 700 (Tex. Crim. App. Sep. 14, 2011) (per curiam) (op. on reh'g, not designated for publication). In *Blackwell*, the habeas applicant was convicted of sexual assault of a child and sentenced to ten years' imprisonment in December 1992. *Id*. at *1. Blackwell was out on bond when his conviction was affirmed on appeal and mandate issued in April 1995. *Id*. at *1–2. In May and July 1995, Blackwell attempted to turn himself into the Travis County Sheriff's Office but was advised that he could not be taken into custody until a capias was issued. *Id*. at *2. A capias was issued in October 1995, but Blackwell was not arrested until March 2011. *Id*. Blackwell argued that he was entitled to credit for the time that he had been out of custody. *Id*. at *1. The Court of Criminal Appeals agreed and granted relief, following the reasoning it had adopted in *Thiles*. *Id*. at *2–3. As it had in *Thiles*, the court noted that Blackwell "did not violate any conditions of his bond" and "was improperly out of custody on bond through no fault of his own." *Id*. at *3. The court added that during the time of Blackwell's release, "[h]e

6

was not attempting to conceal himself, and for the fifteen years between the issuance of the capias in 1995 and the service of that capias in 2011, the State made no efforts to secure Applicant so that he might begin to serve his sentence." *Id*.

There are important distinctions between *Thiles* and *Blackwell* and the case before us. In both *Thiles* and *Blackwell*, the applicants had been released on appeal bonds, and the court in each case noted that the applicant had not violated the conditions of his bond during the time of his release. Here, Alvarez never paid the bond amount or executed an appeal bond. Thus, unlike in *Thiles* and *Blackwell*, we cannot credit Alvarez for complying with the conditions of a bond. Additionally, in both *Thiles* and *Blackwell*, the State had failed to take the applicant into custody *after* his conviction had been affirmed and mandate had issued, and that failure lasted approximately twenty years in *Thiles* and fifteen years in *Blackwell*. Here, in contrast, the record reflects that mandate issued on September 18, 2018, and capias issued two days later, on September 20, 2018, with instructions that Alvarez begin serving his sentence one month later, on October 20. Although that date was later adjusted to November 15, 2018, there is no indication in the record that the State failed to take appropriate action to place Alvarez into custody once mandate had issued. Instead, the State's failure was limited to the period of time when Alvarez's appeal was pending and his conviction was not final.

We also observe that in *Thiles*, the applicant's conviction had been reversed at the time he was released on bond. *Thiles*, 333 S.W.3d at 149. As Presiding Judge Keller explained in a concurring opinion, Thiles had "prevailed at the court of appeals. At the time he was released from custody, he had already succeeded in his attempt to procure relief and he no longer stood convicted." *Id*. at 154 (Keller, P.J., concurring). Alvarez, in contrast, has not prevailed at any level.

7

Moreover, in *Thiles*, both the State and the trial court had agreed with the applicant that he was entitled to relief. *Id*. at 152. Under the circumstances, such agreement was not surprising. As the Court of Criminal Appeals explained, "From the time the applicant was released on the appeal bond, January 25, 1985, until the date of his arrest May 21, 2009, he accrued no additional criminal convictions. He remained a productive member of society during that time, lived openly under his own name, and made no effort to conceal his whereabouts." *Id*. at 150. Similarly in *Blackwell*, the Court of Criminal Appeals observed that during the time of Blackwell's release, he "was serving a deferred adjudication community supervision sentence in an unrelated case," "was complying with the conditions of that supervision, including reporting to his supervising officer," and "successfully completed the supervision for that other sentence." *Blackwell*, 2011 Tex. Crim. App. Unpub. LEXIS 700, at *2. In Alvarez's case, we know very little about what he did while he was out of custody, because he had no obligation to report to anyone and had no bond conditions with which he was required to comply.

In summary, *Thiles* and *Blackwell* differ in many respects from this case, including that Alvarez was never in custody, he was not out on an appeal bond and thus cannot be credited with complying with any bond conditions, and the State's failure to take Alvarez into custody occurred while his appeal was pending rather than after his conviction had become final. Under these circumstances, we cannot conclude that Alvarez is entitled to the same relief that the Court of Criminal Appeals granted to the applicants in *Thiles* and *Blackwell*.

Because Alvarez was never in custody while his appeal was pending, he should not be entitled to credit for time served. As the Court of Criminal Appeals explained in a similar case,

"Any other holding . . . would permit ministerial officers to thwart and nullify the judgment of courts." *Ex parte Francis*, 510 S.W.2d 345, 346 (Tex. Crim. App. 1974). The Court added, "The people of a State are interested in punishment of those convicted of crimes and [that] public interest should not be subservient to illegal acts and default of officers who have charge of prisoners." *Id*. In this case, a jury convicted Alvarez of driving while intoxicated and the trial court sentenced him to 120 days' confinement in county jail. Alvarez should not be allowed to avoid his sentence simply because a deputy clerk erroneously recalled the trial court's commitment order.

## CONCLUSION

On this record, we conclude that the trial court did not abuse its discretion in denying Alvarez's application for writ of habeas corpus. Accordingly, we affirm the trial court's order.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: March 7, 2019

Publish